*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BROWN-THOMPSON/THOMPSON, Minors.

UNPUBLISHED
April 25, 2024

No. 365675
Oakland Circuit Court
Family Division
LC No. 15-829704-NA

In re BROWN-THOMPSON/THOMPSON, Minors.

No. 365760
Oakland Circuit Court
Family Division
LC No. 15-829704-NA

Before: CAVANAGH, P.J., and RICK and PATEL, JJ.

PER CURIAM.

In Docket No. 365675, respondent-father appeals as of right a March 2, 2023 order, which terminated his parental rights to his minor child, TT. In Docket No. 365760, respondent-mother appeals as of right the same March 2, 2023 order, which terminated her parental rights to her minor children, ET[1] and TT.[2] It is undisputed respondents' respective parental rights were terminated under MCL 712A.19b(3)(g) (failure to provide proper care and custody), (i) (previous termination of parental rights), and (j) (reasonable likelihood the child will be harmed if returned to the parent). We affirm in both dockets.

---

[1] Respondent-father was ET's legal father. Respondent-father's parental rights to ET were terminated in a previous child protective proceeding.

[2] The appeals were consolidated "to advance the efficient administration of the appellate process." *In re Brown-Thompson/Thompson Minors*, unpublished order of the Court of Appeals, entered June 28, 2023 (Docket Nos. 365675; 365760).

## I. BACKGROUND

This matter began when petitioner, the Department of Health and Human Services (DHHS), filed a petition in March 2022. In relevant part, the petition alleged the children were without proper care and custody because respondent-mother, who has a history of substance abuse, was in jail and respondent-father, who was on parole at the time, had never provided for TT. It was further alleged respondents had an extensive history with Child Protective Services (CPS), and their parental rights to other children had been terminated in the past. It was requested the trial court authorize the petition, place the children in the care of DHHS, exercise jurisdiction, and terminate respondents' respective parental rights at the initial disposition. An ex parte order was entered, requiring the children be placed in care. The children were ultimately placed in a foster home. After a preliminary hearing, the trial court authorized the petition, and respondents were granted supervised parenting time.

While the matter was pending, respondent-mother was convicted of several crimes and was sentenced to probation. Respondent-mother consistently attended parenting times when she was free from incarceration, but the children demonstrated serious behavioral issues before and after parenting times. Respondent-father often cancelled parenting times with TT, or failed to attend without notice. Respondents were offered services, but they either failed to participate or benefit.

A combined adjudication trial and statutory grounds hearing was held over three days in June 2022 and October 2022. Respondent-mother was only present at the June 24, 2022 proceeding. Respondent-father did not appear at any of the proceedings despite being provided with notice and efforts on the part of the caseworker and his counsel to contact him. Evidence was presented concerning respondents' criminal history, previous terminations, and failure to provide proper care and custody. The trial court exercised jurisdiction and found grounds for termination were established under MCL 712A.19b(3)(g), (i), and (j).

In February 2023, the best-interests hearing was held. Respondent-father, who had been arrested and lodged in jail for absconding parole and cutting off his tether, was present. Respondent-mother, who had absconded from probation and had a warrant for her arrest, did not participate despite being provided with notice. After hearing testimony from the caseworker and the foster parent, the trial court found termination of respondent-father's parental rights to TT was in his best interests. The trial court also found termination of respondent-mother's parental rights to ET and TT was in their best interests. These appeals followed and were consolidated.

## II. STANDARDS OF REVIEW

Questions of constitutional law are reviewed de novo. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). We review for clear error the trial court's finding that statutory grounds exist for termination of a respondent's parental rights. *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). We also review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Clear error exists if we have a definite and firm conviction that a mistake has been made. *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020).

III.  DOCKET NO. 365675

A.  STATUTORY GROUNDS

Respondent-father argues that the trial court clearly erred by finding statutory grounds to terminate his parental rights to TT.  He also argues that the trial court violated his constitutional right to the care and custody of TT.  We disagree.

The trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence to terminate parental rights.  *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (citation omitted).  The trial court found grounds for terminating respondent-father's parental rights to TT were established under MCL 712A.19b(3)(g), (i), and (j).  We conclude that the trial court did not clearly err by finding termination of respondent-father's parental rights was proper under MCL 712A.19b(3)(j), which authorizes termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."  The harm contemplated under (j) includes emotional harm, as well as physical harm.  *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

Respondent-father was in prison when TT was born.  Respondent-father stayed in contact with respondent-mother, but did not inquire about TT's well-being.  Respondent-father did not financially or emotionally provide for TT.  This continued after respondent-father was released from prison.  While respondent-father saw TT a few times after he was released from prison, he had not seen TT for several months in the time leading up to the filing of the petition.  Respondent-father was unable to provide care and custody to TT before the petition was filed.  Contrary to respondent-father's arguments on appeal, he failed to name a relative who could provide care.

During the proceedings, respondent-father failed to consistently attend parenting times with TT, and respondent-mother did not believe respondent-father and TT were bonded.  Although respondent-father attended substance abuse treatment in May 2022, and June 2022, he stopped communicating with the caseworker after he was released.  Despite efforts on the part of respondent-father's counsel and the caseworker to contact respondent-father, he did not participate in the combined adjudication trial and statutory grounds hearing.  Respondent-father's failure to participate demonstrates a lack of commitment.  Because there is a reasonable likelihood TT would experience neglect, and therefore physical and emotional harm, if returned to respondent-father, the trial court's finding that termination of respondent-father's parental rights was proper under MCL 712A.19b(3)(j) was not clearly erroneous.  Because termination was proper under MCL 712A.19b(3)(j), we need not specifically consider the additional grounds upon which the trial court based its decision.  See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).  And because at least one ground for termination established, respondent-father's constitutional argument necessarily fails.  See *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded in part by statute as stated in *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013) ("Once the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established . . ., the liberty interest of the parent no longer includes the right to custody and control of the children.").

-3-

## B. BEST INTERESTS

Respondent-father also argues that the trial court clearly erred by finding termination of his parental rights was in TT's best interests. We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346. When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

The record reflects that TT and respondent-father were not bonded. Respondent-father, who was in prison when TT was born, had limited involvement in TT's life and never provided for him. TT also observed respondent-father abuse respondent-mother. During the proceedings, respondent-father only attended three in-person parenting times. Respondent-father had limited parenting skills, and failed to engage with TT. Respondent-father and TT also participated in virtual parenting times in May 2022 and June 2022, but TT was not interested in engaging with respondent-father.

While the parent-child bond is only one factor for the trial court to consider, *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012), respondent-father was unable to provide stability and permanency. Respondent-father continued to engage in substance abuse during the proceedings and continued a relationship with respondent-mother despite knowing it violated a condition of his parole. Although DHHS was not required to provide respondent-father with services, DHHS offered services. Respondent-father either failed to comply with, or benefit from, the services. And respondent-father lacked the ability to provide care at the time of termination. Indeed, respondent-father violated his parole, cut off his tether, and was facing incarceration at the time of termination. Respondent-father also failed to attend important court proceedings. In short, respondent-father lacked commitment, and failed to take responsibility.

TT had behavioral issues and medical issues. There is no indication respondent-father would be able to ensure TT obtained the services and treatment he required to thrive. TT was doing well in his placement and had improved since entering care. While the TT's foster parent could not offer permanency, a family friend was interested in adopting TT and was bonded with the child. The trial court did not clearly err by finding termination of respondent-father's parental rights to TT was in the child's best interests.

## C. ALLEGED DUE-PROCESS VIOLATION

Respondent-father further argues that his due-process right to notice was violated because representatives from DHHS did not locate and notify him of the child protective proceedings in a timely manner. We disagree.

Respondent-father did not argue in the trial court that his right to due process was violated or that he was not provided with notice of the child protective proceedings. This issue is unpreserved. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Unpreserved arguments are reviewed for plain error affecting substantial rights. *In re Pederson*, 331 Mich App at 463. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. Reversal is only warranted when the plain error "seriously affect[ed] the integrity, fairness, or public reputation of judicial proceedings." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

Parents have fundamental due-process rights in termination of parental rights proceedings. *In re Sanders*, 495 Mich at 403-404. "The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (quotation marks and citations omitted).

> The opportunity to be heard includes the right to notice of that opportunity. An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [*Id.* (quotation marks and citation omitted).]

"[A] parent is entitled to procedural due process if the state seeks to terminate his parental rights. The state must make reasonable efforts to notify [the parent] of the proceedings and allow him a meaningful opportunity to participate." *Id.* at 122.

Respondent-father argues DHHS failed to comply with the Absent Parent Protocol and its own policies to locate him. The Absent Parent Protocol requires foster care workers to use diligent efforts to locate an absent parent. Absent Parent Protocol, § C(3), p 7. These efforts include: (1) interviewing the parent's relatives and friends; (2) checking telephone books and the Internet; (3) searching DHHS databases; (4) inquiring into voter registration and with the Friend of the Court; (5) searching the records of the Department of Corrections, local jails, the United States Post Office, the County Clerk's Office for vital statistics, and the Secretary of State; (6) contacting the parent's last place of employment; and (7) using the Federal Parent Locator Service. *Id.* "Location efforts must be documented in the case service plan." *Id.*

CPS specialist Galen Martin testified about the steps he took to locate respondent-father at the beginning of the proceedings. Martin testified that he followed the Absent Parent Protocol and was able to locate respondent-father at an address in Pontiac, Michigan. Martin spoke to

respondent-father at the Pontiac address, and respondent-father reported he was unable to provide care to TT. Respondent-father provided Martin with his phone number and e-mail address after they met in person. While respondent-father argues that Martin's attempts to locate him were not documented in the case service plan, we fail to see how this is dispositive. Indeed, Martin testified about his efforts to locate respondent-father, which were successful.

With respect to whether respondent-father was provided sufficient notice of the child protective proceedings,

> [a]side from the constitutional right to notice inherent in due process, respondents in child protective proceedings have a statutory right to notice. The absence of this notice to a respondent in a protective proceeding constitutes a jurisdictional defect. Therefore, failure to give adequate notice to a respondent in a protective proceeding makes "all proceedings in the [family] court void," at least with respect to the respondent denied notice. [*In re AMB*, 248 Mich App 144, 173; 640 NW2d 262 (2001) (alteration in original; citations omitted; footnote omitted).]

Respondent-father was undoubtedly provided with notice. Before the adjudication trial and the hearings held between April 6, 2022, and October 25, 2022, respondent-father was mailed either a summons or a notice of hearing at the Pontiac address, or an address in Charlotte, North Carolina.[3] Additionally, respondent-father was mailed a copy of the petition to the Pontiac address, and respondent-father participated in the April 6, 2022 pretrial hearing. Although it appears respondent-father was not mailed notices or summonses for the February 13, 2023 or February 27, 2023 proceedings related to the best-interests hearings, respondent-father was in jail at that time. Respondent-father appeared at both hearings. We discern no due-process violation. Indeed, respondent-father was provided with notice of the child protective proceedings, participated at times, attended parenting times with TT, was in contact with the caseworker, and was provided with counsel who represented him at the adjudication trial and all the hearings. Moreover, given the facts of this case, we fail to see how any plain error would "seriously affect the integrity, fairness, or public reputation of judicial proceedings." See *In re Mota*, 334 Mich App at 311. Respondent-father is not entitled to relief.

IV. DOCKET NO. 365760

A. STATUTORY GROUNDS

Respondent-mother argues that the trial court clearly erred by finding statutory grounds to terminate her parental rights to TT and ET. We disagree.

The trial court found grounds for terminating respondent-mother's parental rights to TT and ET were established under MCL 712A.19b(3)(g), (i), and (j). We conclude that the trial court did not clearly err by finding termination of respondent-mother's parental rights to TT and ET was

---

[3] It appears some notices were mailed to the North Carolina address because, after a June 28, 2022 order was mailed to the Pontiac address, it was forwarded by the United States Post Office to the North Carolina address.

proper under MCL 712A.19b(3)(j), which authorizes termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." The harm contemplated under (j) includes emotional harm, as well as physical harm. *In re Hudson*, 294 Mich App at 268.

Respondent-mother exposed TT and ET to substance abuse. At the time of the adjudication trial and statutory grounds hearing, respondent-mother had not resolved her substance abuse issues. Additionally, respondent-mother was often in jail, and TT was present when she was arrested in a condemned building in November 2021. Respondent-mother failed to attend several important court proceedings despite being provided with notice, which demonstrates a lack of commitment. The record supports TT and ET, who had already spent a majority of their young lives in care, would be subjected to neglect if returned to respondent-mother's care, which would cause physical and emotional harm. Because there is a reasonable likelihood the children would experience harm if returned to respondent-mother, the trial court's finding that termination of respondent-mother's parental rights was proper under MCL 712A.19b(3)(j) was not clearly erroneous. Because termination was proper under MCL 712A.19b(3)(j), we need not specifically consider the additional grounds upon which the trial court based its decision. See *In re HRC*, 286 Mich App at 461.

## B. BEST INTERESTS

Respondent-mother also argues that the trial court clearly erred by finding termination of her parental rights was in the best interests of ET and TT. We disagree. While respondent-mother attended a majority of her parenting times, she was not bonded with the children. The children sometimes did not listen to respondent-mother or follow her directions. The children also did not want to hug her, and respondent-mother failed to appropriately engage with them. Indeed, she encouraged the children not to talk to CPS workers and instructed TT not to wear his glasses despite a medical condition. ET did not want to attend parenting times with respondent-mother, and the children demonstrated distress before and after parenting times. The children reported they did not want to return to respondent-mother's care.

While the parent-child bond is only one factor for the trial court to consider, *In re Olive/Metts*, 297 Mich App at 41-42, similar to respondent-father, respondent-mother was unable to provide stability and permanency. She continued to engage in substance abuse during the proceedings and continued a relationship with respondent-father despite knowing it violated a condition of respondent-father's parole. Although DHHS was not required to provide respondent-mother with services, DHHS offered services. Respondent-mother either failed to comply with, or benefit from, the services. Respondent-mother also lacked the ability to provide care at the time of termination. She absconded from probation and had an outstanding arrest warrant at the time of termination. Respondent-mother failed to attend important court proceedings, and never submitted to a psychological evaluation. In short, respondent-mother lacked commitment, and failed to take responsibility.

TT had behavioral issues and medical issues, and ET had behavioral issues. There is no indication respondent-mother would be able to ensure ET and TT obtained necessary services and treatment. She failed to attend a majority of the children's medical appointments during the proceedings and never contacted the children's therapists or teachers. Meanwhile, the children

were doing well in their placement and had improved since entering care. While the children's foster parent could not offer permanency, a family friend was interested in adopting the children and was bonded with them. The trial court did not clearly err by finding termination of respondent-mother's parental rights to TT and ET was in the children's best interests.

## V. CONCLUSION

The trial court did not clearly err by finding a statutory ground to terminate respondents' respective parental rights. The trial court did not clearly err by finding termination of respondent-father's parental rights to TT was in his best interests, and respondent-father's constitutional rights were not violated. The trial court did not clearly err by finding termination of respondent-mother's parental rights to ET and TT were in their best interests.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michelle M. Rick
/s/ Sima G. Patel